THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| **DANYELA RADABAUGH** <br> 519 Clay Street <br> Carlisle, OH 45005 <br><br> Plaintiff, <br><br> v. <br><br> **GRAHAM PACKAGING COMPANY** <br> 290 Circle Freeway Drive <br> West Chester Township, OH 45246 <br><br> Defendant. | **Case No: 1:21-cv-168** <br><br> **Judge** <br><br> **Jury Demand Endorsed Hereon** |

## COMPLAINT

NOW COMES Plaintiff Danyela Radabaugh ("Plaintiff") and proffers this Complaint for damages against Defendant Graham Packaging Company ("Defendant").

## THE PARTIES

1. Plaintiff Danyela Radabaugh is a natural person residing in Ohio.

2. Defendant Graham Packaging Company is a foreign limited partnership out of Delaware doing business in the Southern District of Ohio.

3. At all times relevant hereto, Plaintiff was an "employee" as the term is defined under the Civil Rights Act of 1964 ("Title VII") and Ohio Revised Code 4112, *et seq*.

4. At all times relevant hereto, Defendant was an "employer" as defined under Title VII and Ohio Revised Code 4112, *et seq*.

## JURISDICTION AND VENUE

5. This action is brought pursuant to Title VII and O.R.C. 4112, *et seq*.

6. Jurisdiction is conferred upon this Court by 28 U.S.C § 1331, which provides for original jurisdiction of Plaintiff's claims arising under the law of the United States.

7. This Court has jurisdiction over Plaintiff's claims under the statutory law of Ohio pursuant to supplemental jurisdiction as codified at 28 U.S.C § 1367.

8. Venue is proper pursuant to 28 U.S.C § 1391 because Plaintiff entered an employment relationship with Defendant in the Southern District of Ohio and performed her job duties there, and Defendant is doing and has done substantial business in the Southern District of Ohio.

## FACTUAL BACKGROUND

9. Plaintiff began working for Defendant on or about September 15, 2017.

10. Plaintiff worked as a Wheel Operator during the first shift.

11. Approximately four months prior to Defendant terminating Plaintiff's employment, Defendant moved Plaintiff from her position as a Wheel Operator during first shift to a Label Operator during second shift.

12. Defendant placed Plaintiff on the second shift because a Wheel Operator with more seniority than her requested to move from the second shift to the first shift.

13. Plaintiff had more seniority than many of the wheel operators on second shift, so she demanded Defendant to place her in a wheel operator position during second shift.

14. Defendant denied Plaintiff's request. Defendant informed Plaintiff that she needed to work as a Label Operator on the second shift because she was the only one with experience as a label operator.

15. Defendant's explanation did not make sense given that someone on second shift had to have worked as a label operator before, as the person who switched shifts with Plaintiff worked as a wheel operator.

16. Defendant's denial upset Plaintiff given her greater seniority than the wheel operators and operating the label machine on second shift is grueling due to the fact that only one label operator operates two machines during second shift. In contrast, two Label Operators operate the two label machines during first shift.

17. In or around late May 2019, Plaintiff's supervisor presented Plaintiff her six-month review. In the review, the supervisor provided Plaintiff an overall score of 3.125 out of 5.00. The review provides that a 3 rating is labeled a "Valued Performance" and is defined as the following: "Performs all essential functions of the job effectively or accomplished all the essential elements of the objective/value." Plaintiff's supervisor recommended that Defendant provide her a wage increase due to her positive review. In order for the wage increase to take effect, however, the Plant Manager, AJ (LNU), had to approve the review.

18. Approximately a month later, Plaintiff contacted Defendant's human resources department because Defendant had yet to provide her increase in pay. Plaintiff spoke with a human resources representative, Aubrey, who informed Plaintiff that AJ had not signed off on her review. AJ took several more weeks to sign off on Plaintiff's review, further delaying her wage increase.

19. In or around the middle of July 2019, Plaintiff overheard the Production Manager, Ross, say, "What's [Plaintiff] bitching about?"

20. Plaintiff was in the office area at the time she heard Ross's comment. Naturally, Ross's sexually derogatory comment offended Plaintiff. As such, she complained about Ross's

comment to the Plant Manager, AJ. AJ responded to Plaintiff's comment by saying he would investigate it and address it.

21. On or around July 24, 2019, the B Shift Supervisor, Bob (LNU), asked Plaintiff if she would work as the wheel operator on Line 5 because the scheduled wheel operator on that line called off work. Plaintiff responded, "no," as Defendant had not trained her how to perform color changes and label changes to the bottles on Line 5.

22. Performing these functions requires special training because a different process is used when performing these functions on Line 5 compared to performing these same functions on the other Lines.

23. In fact, Plaintiff believes that Defendant provided the normal wheel operator on Line 5 an additional two months of training on how to perform those functions on Line 5. Plaintiff knew that based upon the schedule that day, the person operating the wheel on Line 5 had to perform both of those functions during second shift that day.

24. Given that Plaintiff declined Bob's request, Bob asked a wheel operator on Line 3, Larry Brooks, if he would work as the wheel operator on Line 5 that day. Mr. Brooks agreed. Mr. Brooks' willingness surprised Plaintiff, however, as Defendant had provided no training at all on how to operate the wheel on Line 5.

25. Indeed, Mr. Brooks did not even know how to turn the wheel on and off properly on Line 5. Bob asked Plaintiff to assist Mr. Brooks that day, likely due to the fact Mr. Brooks did not know how to operate it.

26. During second shift that day, Plaintiff saw that Mr. Brooks could not restart the wheel on Line 5 after he had previously turned it off. He indicated to her that he had tried three separate times to restart the wheel before she walked over to him.

27. Plaintiff properly restarted the machine, but after a few seconds, metal began coming out of the mold.

28. Plaintiff immediately turned the machine off when that started and informed Mr. Brooks to get maintenance to fix the machine.

29. Defendant investigated the malfunction by talking to Plaintiff, Mr. Brooks, Bob, and the maintenance employee who fixed the machine.

30. After the investigation, Mike Russell (A Shift Supervisor) informed Plaintiff and Mr. Brooks that the machine malfunctioned due to Mr. Brooks failing to turn off the machine properly.

31. A few days later, Plaintiff's machine malfunctioned when an internal piece of the machine broke. The machine's internal piece broke when Plaintiff conducted a "purge" on the machine. She conducted a purge because the machine did not run during first shift that day and a color change had been performed. A purge ensures that everything is cleaned out of the machine after a color change.

32. As the machine broke during the purge, Plaintiff witnessed the wheel shift. She notified the maintenance person and others about the wheel shifting.

33. The maintenance person fixed the machine that day, informing Plaintiff that it was not her fault given it involved an internal piece, i.e., a "linkage" problem.

34. Plaintiff restarted the machine after the maintenance person fixed the machine, but it continued not to work properly. Specifically, the plastic was not going into the mold correctly, causing the bottles to not form properly.

35. Plaintiff continued telling the maintenance man and others that the machine did not work properly because the wheel shifted when the machine broke. Eventually, they realized that Plaintiff was correct and that the wheel needed to be realigned.

36. A few weeks later, the Production Manager, Ross (LNU), met with Plaintiff to discuss the incidents with the two machines.

37. During that meeting, Ross asked Plaintiff what happened in both situations, to which she provided the same explanation as discussed above.

38. The following day, the Plant Manager, AJ, called Plaintiff into a meeting with Ross and the Human Resources Manager, Aubrey (LNU), to discuss the incidents.

39. AJ raised his voice at Plaintiff within the first few minutes of the meeting. Specifically, he said, "Everywhere you go, everything breaks."

40. Plaintiff tried to explain that the incidents were not her fault, but AJ cut her off and said, "I don't care what you say, nothing's going to change my mind."

41. At that point, Aubrey informed Plaintiff that Defendant was terminating her employment supposedly under Defendant's progressive disciplinary policy.

**COUNT I**
**Sex Discrimination**
**Title VII and O.R.C. 4112** *et seq.*

42. Plaintiff reasserts and reincorporates all allegations in the paragraphs above as if fully rewritten herein.

43. At all times relevant hereto, Plaintiff, as a female, is a protected person under Title VII and O.R.C. 4112 *et seq.*

44. Plaintiff was qualified for her position given her years of experience and positive six-month review.

45. Plaintiff suffered an adverse employment action when: (1) she was moved from her position as a wheel operator during first shift to label operator during second shift, despite Plaintiff's

opposition to the transition; and (2) she was written up for machine malfunctions caused by a male employee and no fault of hers, which ultimately resulted in her termination.

46. Defendant treated Plaintiff less favorable than similar-situatied male employees. For example, Defendant provided Plaintiff a strike for a machine malfunctioning, yet did not provide Mr. Brooks a strike despite the fact he caused he malfunction by not turning the machine off properly.

47. Upon Plaintiff's termination, Defendant replaced her position with a male.

48. Plaintiff will be able to establish that any allegedly legitimate reason for her termination was a pretext of discrimination.

### COUNT II
### Retaliation
### Title VII and O.R.C. 4112 *et seq.*

49. Plaintiff reasserts and reincorporates all allegations in the paragraphs above as if fully rewritten herein.

50. At all times relevant hereto, Plaintiff, as a female, is a protected person under Title VII and O.R.C. 4112 *et seq.*

51. Plaintiff was qualified for her position given her years of experience and positive six-month review.

52. Plaintiff engaged in protected conduct when she complained to Defendant's Plant Manager, AJ, regarding sexist comments another management-level employee made in reference to her.

53. Defendant's proffered reason for terminating Plaintiff (i.e., machine malfunctions caused by Mr. Brooks) is a pretext of retaliation given that there is close temporal proximity in Plaintiff complaining of sexist comments and Defendant terminating her for this baseless reason.

54. Plaintiff will be able to establish that any allegedly legitimate reason for her termination was a pretext of retaliation.

55. Furthermore, Plaintiff suffered an adverse employment action when: (1) she was moved from her position as a wheel operator during first shift to label operator during second shift, despite Plaintiff's opposition to the transition; and (2) she was written up for machine malfunctions caused by a male employee and no fault of hers, which ultimately resulted in her termination.

56. Defendant lacked good faith and/or reasonable grounds to believe it had not violated Title VII and O.R.C. Chapter 4112 *et seq.*, in its decision to terminate Plaintiff's employment.

57. As a result of Defendant's unlawful and retaliatory actions, Plaintiff has been damaged.

WHEREFORE, Plaintiff demands for all Counts, monetary damages including back pay and benefits, statutory liquidated damages, expert witness fees and attorneys' fees and costs, front pay, and compensatory damages in an amount to be determined at trial, but in any event not less than $75,000.00 and any and all other relief, which this Court deems just and appropriate.

Respectfully submitted,

/s/ Bradley L. Gibson
Bradley L. Gibson (0085196)
**GIBSON LAW, LLC**
9200 Montgomery, Rd., Suite 11A
Cincinnati, OH 45242
(brad@gibsonemploymentlaw.com)
513-834-8254 (Phone)

*Attorney for Plaintiff*

## **JURY DEMAND**

Plaintiff hereby requests a jury of at least eight (8) persons.

>/s/ Bradley L. Gibson
>Bradley L. Gibson (0085196)